## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>EX REL.</u> [UNDER SEAL]<br><br><div align="right">Plaintiffs,</div><br>v.<br><br>[UNDER SEAL]<br><div align="right">Defendants.</div> | Civil Action No:<br><br>**COMPLAINT** |

### FILED IN CAMERA AND UNDER SEAL

### DO NOT ENTER IN PACER

FILED IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.
2021 FEB 17 PM 12: 44

1

449408v.3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>EX REL.</u> HITROST LLC, | Civil Action No: |
| Plaintiffs, | **COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 <u>ET SEQ.</u>** |
| v. | |
| STUDY ACROSS THE POND, LLC; STUDY ACROSS THE POND STUDY IN BRITAIN LIMITED; ACROSS THE POND - STUDY IN BRITAIN LIMITED; JOHN BORHAUG; HANNAH LISCOMBE; ABERYSTWYTH UNIVERSITY; BANGOR UNIVERSITY; BIMM LIMITED, D/B/A BIMM INSTITUTE, BRITISH AND IRISH MODERN MUSIC INSTITUTE; BRUNEL UNIVERSITY LONDON; CARDIFF UNIVERSITY; CITY, UNIVERSITY OF LONDON; EDINBURGH NAPIER UNIVERSITY; FALMOUTH UNIVERSITY; GOLDSMITHS' COLLEGE, D/B/A GOLDSMITHS, UNIVERSITY OF LONDON; KINGSTON UNIVERSITY HIGHER EDUCATION CORP.; LONDON METROPOLITAN UNIVERSITY; LOUGHBOROUGH UNIVERSITY; MIDDLESEX UNIVERSITY; OXFORD BROOKES UNIVERSITY; QUEEN MARY UNIVERSITY OF LONDON; REGENT'S UNIVERSITY LONDON LTD.; ROEHAMPTON UNIVERSITY; ROYAL HOLLOWAY AND BEDFORD NEW COLLEGE, D/B/A ROYAL HOLLOWAY, UNIVERSITY OF LONDON; SCHOOL OF ORIENTAL AND AFRICAN STUDIES, D/B/A SOAS, UNIVERSITY OF LONDON; SOLENT UNIVERSITY HIGHER EDUCATION CORP.; SWANSEA UNIVERSITY; THE CONDÉ NAST PUBLICATIONS LTD., | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT ENTER IN PACER** |

2

D/B/A THE CONDÉ NAST COLLEGE
OF FASHION & DESIGN; THE
EDWARD JAMES FOUNDATION,
D/B/A WEST DEAN COLLEGE OF
ARTS AND CONSERVATION; THE
QUEEN'S UNIVERSITY OF BELFAST;
THE ROYAL AGRICULTURAL
UNIVERSITY; THE UNIVERSITY OF
BIRMINGHAM; THE UNIVERSITY OF
EAST ANGLIA; THE UNIVERSITY OF
ESSEX; THE UNIVERSITY OF
HUDDERSFIELD; THE UNIVERSITY
OF KENT; THE UNIVERSITY OF
LEEDS; THE UNIVERSITY OF
LEICESTER; THE UNIVERSITY OF
LIVERPOOL; THE UNIVERSITY OF
SHEFFIELD; THE UNIVERSITY OF
SURREY; UNIVERSITY FOR THE
CREATIVE ARTS; UNIVERSITY OF
BRIGHTON; UNIVERSITY OF
CHESTER; UNIVERSITY OF DERBY;
UNIVERSITY OF DUNDEE;
UNIVERSITY OF DURHAM;
UNIVERSITY OF EXETER;
UNIVERSITY OF GREENWICH;
UNIVERSITY OF HERTFORDSHIRE;
UNIVERSITY OF NEWCASTLE UPON
TYNE; UNIVERSITY OF SOUTH
WALES; UNIVERSITY OF
SOUTHAMPTON; UNIVERSITY OF
STIRLING; UNIVERSITY OF
STRATHCLYDE; UNIVERSITY OF
WINCHESTER; UNIVERSITY OF
WORCESTER; and UNIVERSITY OF
YORK,

                              Defendants.

<u>**COMPLAINT**</u>

**I.    <u>INTRODUCTION</u>**

1.    This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and fraudulent statements and claims made or caused to be made by Defendants Study Across The Pond LLC, Study Across The Pond Study In Britain Limited, and Across The Pond - Study In Britain Limited, and their principals, John Borhaug and Hannah Liscombe (collectively, "Across the Pond"), and the Defendant Universities (which include Aberystwyth University; Bangor University; BIMM Limited, d/b/a BIMM Institute, British and Irish Modern Music Institute; Brunel University London; Cardiff University; City, University of London; Edinburgh Napier University; Falmouth University; Goldsmiths' College, d/b/a Goldsmiths, University of London; Kingston University Higher Education Corp.; London Metropolitan University; Loughborough University; Middlesex University; Oxford Brookes University; Queen Mary University of London; Regent's University London Ltd.; Roehampton University; Royal Holloway and Bedford New College, d/b/a Royal Holloway, University of London; School of Oriental and African Studies, d/b/a SOAS, University of London; Solent University Higher Education Corp.; Swansea University; The Condé Nast Publications Ltd., d/b/a The Condé Nast College of Fashion & Design; The Edward James Foundation, d/b/a West Dean College of Arts and Conservation; The Queen's University of Belfast; The Royal Agricultural University; The University of Birmingham; The University of East Anglia; The University of Essex; The University of Huddersfield; The University of Kent; The University of Leeds; The University of Leicester; The University of Liverpool; The University of Sheffield; The University of Surrey; University for the Creative Arts; University of Brighton; University of Chester; University of Derby; University of

4

Dundee; University of Durham; University of Exeter; University of Greenwich; University of Hertfordshire; University of Newcastle upon Tyne; University of South Wales; University of Southampton; University of Stirling; University of Strathclyde; University of Winchester; University of Worcester; and University of York) to the United States in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA" or "Act").

2.    Across the Pond markets itself as a recruitment agency for American students, including those receiving federal financial aid, who wish to complete their degrees at universities in the United Kingdom.  In exchange for every American university student recruited, Defendant Universities pay Across the Pond a percentage of the student's tuition. Such compensation arrangements are prohibited by the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219, 1232-54 (1965) ("HEA").

3.    Every year, Congress provides more than $150 billion in federal grants and loans to institutions that enroll students in qualified educational programs.  The United States Department of Education ("DOE") administers these programs, which were established under Title IV of the HEA, 20 U.S.C. §§ 1070 *et seq.*

4.    As a condition of serving students who benefit from Title IV funding, schools are required to abide by the applicable statutes and DOE regulations and to sign a "Program Participation Agreement."  As relevant here, as a condition of both eligibility and payment of funds under Title IV programs, schools are precluded from paying referral or contingency fees to recruit students receiving federal grants and/or loans.

5.    The HEA's so-called "Incentive Compensation Ban" serves to protect both U.S. students and the Government from unscrupulous recruitment practices.  The clear purpose of the ban is to de-incentivize aggressive sales tactics that push students to enroll in universities

that may not be the best fit or provide the best education, all the while charging the government for these programs.

6.      Across the Pond engages in exactly the kind of recruitment stratagems the HEA is intended to protect against. Using its exclusive recruiting relationships with Defendant Universities as leverage, Across the Pond engages in aggressive recruiting tactics with prospective students to push them to matriculate at the schools with which Across the Pond has contracts—because Across the Pond directly benefits from each one of these students' matriculation. Defendant Universities are equally culpable as they knowingly provide improper incentives to Across the Pond to recruit students.

7.      In so doing, Defendants have violated federal laws, including 20 U.S.C. § 1094(a), (a)(1), (a)(20), and 34 C.F.R. § 668.14(b)(22)(i), which prohibit the paying of commissions, bonuses, and/or incentive payments for recruiting students for enrollment and the use of federal funds as the source of these payments.

8.      By this conduct, Defendants have further violated the False Claims Act ("FCA"). The FCA prohibits the submission of false or fraudulent claims for payment to the United States, as well as the making of false statements for the purpose of causing a false claim to be paid. The FCA provides that any person who knowingly submits, or causes to be submitted, false or fraudulent claims to the government for payment or approval is liable for civil penalties, plus three times the amount of damages sustained by the government. The Act empowers persons with information regarding false or fraudulent claims made to the government, "relators," to bring an action on behalf of the United States and to share in any recovery.

6

9.     Relator Hitrost LLC ("Relator") learned of this wrongdoing firsthand, through its principal, who is the lead North American recruiter for one of the Defendant Universities. After learning of Across the Pond's scheme, and unable to convince Relator's university to stop its practices, Relator now files the instant suit to stop these violations to protect both the U.S. students unwittingly recruited as part of this scheme and the U.S. taxpayers.  Pursuant to the FCA, Relator seeks to recover on behalf of the United States damages and civil penalties arising from false and improper claims for payment that the Defendants submitted, or caused to be submitted, to DOE.

## II.     PARTIES

10.     Plaintiff-Relator Histrost LLC is a limited liability company located in Delaware.  Its principal works as the lead North American student recruiter for one of the Defendant Universities.  In that capacity, Relator has gained first-hand knowledge of the illegal recruitment compensation arrangements between Across the Pond and the Defendant Universities.  Relator's principal has taken repeated steps to remedy the violations but has been unable to stop the scheme, which has been going on for several years and continues to this day.

11.     Defendant Study Across the Pond, LLC is a Massachusetts limited liability corporation with a principal place of business in Beverly, Massachusetts.  The company was founded in 2004.  Across the Pond maintains branches in multiple states, including at least California, Colorado, Florida, Georgia, Maryland, Nevada, New Jersey, New York, Pennsylvania, Tennessee, Texas, and Wisconsin, and advertises to students nationwide. Across the Pond is an educational recruitment agency targeting American students who wish to study at a British university.  Across the Pond's website promises American students that every U.K. university available through its system accepts federal student aid, including Stafford

7

Loans.  A student's U.K. student visa depends on showing an ability to pay for their university education in full.  Thus, the website urges students to complete the Free Application for Student Aid ("FAFSA") paperwork, the first step to obtaining any government assistance in paying for higher education, as soon as possible.  The website lists 17 employees, including the company's two principals, Defendants John Borhaug and Hannah Liscombe.

12.     Across the Pond has at least two European corporate entities, Defendant Study Across the Pond Study in Britain Ltd., an Irish private limited company based in Meath, Ireland, and Defendant Across The Pond - Study In Britain Limited, an English private limited company based in Hampshire, England.  Defendants Borhaug and Liscombe control both of these foreign entities.  Across the Pond previously had other foreign entities, including Across The Pond Student Recruitment Limited, a company registered in 2006 in Surrey, England. That prior iteration of Across the Pond began liquidation proceedings in September 2016 due in part to approximately £2 million in unpaid taxes.

13.     Defendant John Borhaug is the Chief Executive Officer and Co-Founder of Across the Pond.  Mr. Borhaug's principal residence is in Henderson, Nevada at 1362 Opal Valley Street.  Mr. Borhaug is originally from Norway, and purports to hold multiple advanced degrees and have experience in "communications and research" at various universities.

14.     Defendant Hannah Liscombe is the Managing Director and Co-Founder of Across the Pond.  Ms. Liscombe shares a residence with Mr. Borhaug, who is believed to be her husband.  Ms. Liscombe is from the United Kingdom and purports to "specialize[] in student development and career counseling" for university students.

8

15.    Defendant Universities are the U.K. universities who hold contracts with Across the Pond. Each of these universities, as represented by Across the Pond, accepts U.S. government loans and grants for qualifying American students.

16.    Defendant Aberystwyth University is an institute of higher education located in Aberystwyth, Wales. It was founded in 1872 as University College Wales, Aberystwyth, a constituent college of the federal University of Wales. In 2007, it became an independent university and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 7,800 students.

17.    Defendant Bangor University is an institute of higher education located in Bangor, Wales. It was founded in 1884 as the University College of North Wales, a constituent college of the federal University of Wales. In 2007, it became an independent university and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 10,200 students.

18.    Defendant BIMM Limited, doing business as BIMM Institute, British and Irish Modern Music Institute, is an institute of higher education located in Hove, England. It was founded in 2001 as the Brighton Institute of Modern Music. In 2014, it was renamed the BIMM Institute, British and Irish Modern Music Institute. As of the 2018/2019 academic year, it had approximately 7,000 students.

19.    Defendant Brunel University London is an institute of higher education located in Uxbridge, England. It was founded in 1962 as the Brunel College of Advanced Technology. In 1966, it received a royal charter, and in 2014, it was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 14,800 students.

20.     Defendant Cardiff University is an institute of higher education located in Cardiff, Wales. It was founded in 1883 as the University College of South Wales and Monmouthshire, before joining the federal University of Wales as a constituent college. In 1999, it began using Cardiff University as its trading name, and in 2005, it became an independent university and formally adopted Cardiff University as its legal name. As of the 2018/2019 academic year, it had approximately 33,200 students.

21.     Defendant City, University of London, is an institute of higher education located in London, England. It was founded in 1894 as the Northampton Institute. In 1966, it received a royal charter as the City University, and in 2016, it became a constituent college of the federal University of London and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 20,200 students.

22.     Defendant Edinburgh Napier University is an institute of higher education located in Edinburgh, Scotland. It was founded in 1964 as Napier Technical College. In 1992, it received full university status, and in 2009, it was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 13,600 students.

23.     Defendant Falmouth University is an institute of higher education located in Falmouth, England. It was founded in 1902 as the Falmouth School of Art. In 2012, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 6,400 students.

24.     Defendant Goldsmiths' College, doing business as Goldsmiths, University of London, is an institute of higher education located in London, England. It was founded in 1891 as Goldsmiths' Technical and Recreative Institute. In 1904, it became a constituent college of the federal University of London and was renamed Goldsmiths' College. In 2006, it

began using Goldsmiths, University of London as its trading name. As of the 2018/2019 academic year, it had approximately 10,400 students.

25.    Defendant Kingston University Higher Education Corporation, doing business as Kingston University, is an institute of higher education located in Kingston upon Thames, England. It was founded in 1899 as the Kingston Technical Institute. In 1992, it received full university status and was renamed Kingston University. As of the 2018/2019 academic year, it had approximately 16,800 students.

26.    Defendant London Metropolitan University is an institute of higher education located in London, England. It was founded in 2002 following a merger between two existing institutions. As of the 2018/2019 academic year, it had approximately 9,200 students.

27.    Defendant Loughborough University is an institute of higher education located in Loughborough, England. It was founded in 1909 as a Technical Institute. In 1966, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 18,400 students.

28.    Defendant Middlesex University is an institute of higher education located in London, England. It was founded in 1878 as St. Katharine's College. In 1992, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 19,600 students.

29.    Defendant Oxford Brookes University is an institute of higher education located in Oxford, England. It was founded in 1865 as the Oxford School of Art. In 1992, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 16,700 students.

30.     Defendant Queen Mary University of London is an institute of higher education located in London, England.  It was founded in 1989 as Queen Mary & Westfield College following a merger between two existing constituent colleges of the federal University of London.  In 2013, it was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 20,600 students.

31.     Defendant Regent's University London Limited is an institute of higher education located in London, England.  It was founded in 1984 as Regent's College.  In 2013, it received full university status and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 1,800 students.

32.     Defendant Roehampton University is an institute of higher education located in Roehampton, England.  It was founded in 1975 as the Roehampton Institute of Higher Education following the merger of four existing institutions.  In 2004, it received full university status, and in 2011, it began using the University of Roehampton as its trading name.  As of the 2018/2019 academic year, it had approximately 12,700 students.

33.     Defendant Royal Holloway and Bedford New College, doing business as Royal Holloway, University of London, is an institute of higher education located in Egham, England.  It was founded in 1879 as Royal Holloway College and became a constituent college of the federal University of London in 1900.  In 1985, it merged with Bedford College by Act of Parliament, and in 1992, it began using Royal Holloway, University of London as its trading name.  As of the 2018/2019 academic year, it had approximately 11,000 students.

34.     Defendant School of Oriental and African Studies, doing business as SOAS, University of London, is an institute of higher education located in London, England.  It was

12

established by royal charter in 1916 as a constituent college of the federal University of London. As of the 2018/2019 academic year, it had approximately 6,000 students.

35.    Defendant Solent University Higher Education Corporation is an institute of higher education located in Southampton, England. It was founded in 1856 as a private School of Art. In 2005, it received full university status and was renamed Southampton Solent University, and in 2017, it was renamed again to Solent University. As of the 2018/2019 academic year, it had approximately 10,000 students.

36.    Defendant Swansea University is an institute of higher education located in Swansea, Wales. It was established by royal charter in 1920 as University College of Swansea, a constituent college of the federal University of Wales. In 2007, it became an independent university and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 20,600 students.

37.    Defendant the Condé Nast Publications Limited, doing business as the Condé Nast College of Fashion & Design, is an institute of higher education located in London, England. The college was established by the magazine in 2013.

38.    Defendant the Edward James Foundation Limited, doing business as West Dean College of Arts and Conservation, is an institute of higher education located in West Dean, England. The college was established by the foundation in 1971. As of the 2018/2019 academic year, it had approximately 80 students.

39.    Defendant the Queen's University of Belfast is an institute of higher education located in Belfast, Northern Ireland. It was founded in 1845 as Queen's College, Belfast, a constituent college of the Queen's University of Ireland. In 1908, it became an independent

13

university by Act of Parliament and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 24,700 students.

40.    Defendant the Royal Agricultural University is an institute of higher education located in Cirencester, England. It was founded in 1842 as the Royal Agricultural College. In 2013, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 1,200 students.

41.    Defendant the University of Birmingham is an institute of higher education located in Birmingham, England. It was founded in 1900 following the merger of two existing institutions and received a royal charter the same year. As of the 2018/2019 academic year, it had approximately 35,400 students.

42.    Defendant the University of East Anglia is an institute of higher education located in Norwich, England. It was founded in 1963. As of the 2018/2019 academic year, it had approximately 17,900 students.

43.    Defendant the University of Essex is an institute of higher education located in Colchester, England. It was founded in 1963 and received a royal charter in 1965. As of the 2018/2019 academic year, it had approximately 15,600 students.

44.    Defendant the University of Huddersfield is an institute of higher education located in Huddersfield, England. It was founded in 1841 as the Young Men's Mental Improvement Society. In 1992, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 17,300 students.

45.    Defendant the University of Kent is an institute of higher education located in Canterbury, England. It was established by royal charter in 1965 as the University of Kent at

Canterbury. In 2003, it was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 19,300 students.

46.    Defendant the University of Leeds is an institute of higher education located in Leeds, England. It was founded in 1874 as the Yorkshire College of Science. In 1904, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 36,300 students.

47.    Defendant the University of Leicester is an institute of higher education located in Leicester, England. It was founded in 1921 as Leicester, Leicestershire and Rutland University College. In 1957, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 16,900 students.

48.    Defendant the University of Liverpool is an institute of higher education located in Liverpool, England. It was founded in 1881 as University College Liverpool. In 1903, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 29,700 students.

49.    Defendant the University of Sheffield is an institute of higher education located in Sheffield, England. It was founded in 1897 as University College of Sheffield following the merger of three existing institutions. In 1905, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 30,200 students.

50.    Defendant the University of Surrey is an institute of higher education located in Guildford, England. It was founded in 1891 as the Battersea Polytechnic Institute. In 1966, it received a royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 16,800 students.

51.     Defendant University for the Creative Arts is an institute of higher education located in Farnham, England. It was founded in 2005 as University College for the Creative Arts at Canterbury, Epson, Farnham, Maidstone and Rochester, following the merger of two existing institutions. In 2008, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 6,600 students.

52.     Defendant University of Brighton is an institute of higher education located in Brighton, England. It was founded in 1857 as the Brighton School of Art. In 1992, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 20,500 students.

53.     Defendant University of Chester is an institute of higher education located in Chester, England. It was founded in 1839 as Chester Diocesan Training College. In 2005, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 14,600 students.

54.     Defendant University of Derby is an institute of higher education located in Derby, England. It was founded in 1851 as the Derby Diocesan Institution for the Training of Schoolmistresses. In 1992, it received full university status and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 19,100 students.

55.     Defendant University of Dundee is an institute of higher education located in Dundee, Scotland. It was founded in 1881 as University College, Dundee, a constituent college of the University of St. Andrews. In 1967, it became an independent university by royal charter and was renamed to its current iteration. As of the 2018/2019 academic year, it had approximately 15,900 students.

16

56.     Defendant University of Durham is an institute of higher education located in Durham, England.  It was founded by Act of Parliament in 1832 and incorporated by royal charter in 1837.  In 2005, it began using Durham University as its trading name.  As of the 2018/2019 academic year, it had approximately 19,000 students.

57.     Defendant University of Exeter is an institute of higher education located in Exeter, England.  It was founded in 1851 as the Exeter Schools of Art and Science.  In 1955, it received a royal charter and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 23,600 students.

58.     Defendant University of Greenwich is an institute of higher education located in London, England.  It was founded in 1891 as Woolwich Polytechnic.  In 1992, it received full university status and was renamed to its current iteration the following year.  As of the 2018/2019 academic year, it had approximately 18,900 students.

59.     Defendant University of Hertfordshire is an institute of higher education located in Hatfield, England.  It was founded in 1948 as Hatfield Technical College.  In 1989, it was established as a Higher Education Corporation, and in 1992, it received full university status and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 24,300 students.

60.     Defendant University of Newcastle upon Tyne is an institute of higher education located in Newcastle upon Tyne, England.  It was founded in 1937 as King's College, a constituent college of the federal University of Durham, following the merger of two existing institutions.  In 1963, it received full university status and was renamed University of Newcastle upon Tyne, and in 2006, it began using Newcastle University as its trading name. As of the 2018/2019 academic year, it had approximately 27,200 students.

17

61.     Defendant University of South Wales is an institute of higher education located in Pontypridd, Wales.  It was founded in 2013 following the merger of two existing universities.  As of the 2018/2019 academic year, it had approximately 22,300 students.

62.     Defendant University of Southampton is an institute of higher education located in Southampton, England.  It was founded in 1862 as the Hartley Institution.  In 1952, it received a royal charter and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 22,700 students.

63.     Defendant University of Stirling is an institute of higher education located in Stirling, Scotland.  It was established by royal charter in 1967.  As of the 2018/2019 academic year, it had approximately 12,500 students.

64.     Defendant University of Strathclyde is an institute of higher education located in Glasgow, Scotland.  It was founded in 1796 as the Andersonian Institute.  In 1964, it received a royal charter and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 22,600 students.

65.     Defendant University of Winchester is an institute of higher education located in Winchester, England.  It was founded in 1840 as the Winchester Diocesan Training School.  In 2005, it received full university status and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 7,800 students.

66.     Defendant University of Worcester is an institute of higher education located in Worcester, England.  It was founded in 1946 as an Emergency Teacher Training College for the University of Birmingham.  In 2005, it received full university status and was renamed to its current iteration.  As of the 2018/2019 academic year, it had approximately 10,000 students.

18

67.     Defendant University of York is an institute of higher education located in York, England.  It was established by royal charter in 1963.  As of the 2018/2019 academic year, it had approximately 19,500 students.

68.     Collectively, the Defendant Universities have approximately 10,000 U.S. students, of which approximately half are receiving financial aid from the U.S. Government.

## III.    JURISDICTION AND VENUE

69.     This is an action brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

70.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), and because acts proscribed by 31 U.S.C. § 3279 occurred in this District and because Defendants conduct business in this district.

71.     Venue is proper in the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a), because Defendants conduct business in the District.

72.     The allegations set forth in this Complaint have not been publicly disclosed within the meaning of the False Claims Act, as amended, 31 U.S.C. § 3730(e)(4).  In the alternative, if the Court finds that there was a public disclosure of such allegations before the filing of this Complaint, Relator is an "original source" as that term is used in the False Claims Act.

73.     To Relator's knowledge, there are no prior pending complaints against Defendants alleging similar facts related to Defendants' fraudulent schemes.

19

74.     Prior to the filing of this Complaint, Relator made substantive disclosures to the Government of facts and evidence underlying the allegations in this Complaint.

75.     This action is filed *in camera* and under seal pursuant to the requirements of the federal False Claims Act.

## IV.    THE INCENTIVE COMPENSATION BAN

76.     Through Title IV of the HEA, 20 U.S.C. §§ 1070 *et seq.*, Congress established financial assistance to eligible students in the form of grants, loans, loan guarantees, and interest subsidies to help defray the costs of higher education.  These grant and loan programs include the Federal Pell Grant Program ("Pell"), 20 U.S.C. §§ 1070a *et seq.*, 34 C.F.R. § 690; the Federal Direct Student Loan Program, 20 U.S.C §§ 1087a *et seq.*, 34 C.F.R. § 685 (which includes the "Stafford" Loans); the Federal Perkins Loan Program, 20 U.S.C. § 1087aa *et seq.*, 34 C.F.R. § 674; the Federal Work Study Program, 20 U.S.C. §§ 1087-57 *et seq.*, 34 C.F.R. § 675, and the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), 20 U.S.C. §§ 1070b *et seq.*, 34 C.F.R. § 676.

77.     Claims for payment for these federal funds can be made in various ways.  DOE does not provide Title IV funds directly to students.  Instead, it established a framework for each school to manage, spend, and account for Title IV funds, from start to finish.  DOE relies on schools to exercise fiduciary obligations in their cash management of Title IV funds.

78.     Under some programs, such as the Pell Grant program, students submit requests for funding directly to the DOE, or to the DOE with the assistance of schools.  Under other programs, such as the Guaranteed Student Loan ("GSL") program, including Stafford Loans, students and schools jointly submit requests for loans to private lenders, which are backed by state guaranty agencies that are, in turn, insured by DOE, which pays only in the event of a

student default.  Regardless of the program payment process, participating educational

institutions—like each of the Defendant Universities—must enter into Program Participation

Agreements ("PPAs") with DOE to become eligible to obtain funds for their students.  20

U.S.C. § 1094(a); 34 C.F.R. § 668.14(a)(l).  PPAs expressly "condition the initial and

continuing eligibility of the school to participate in a program upon compliance with" the

requirements of 20 U.S.C. § 1094 and 34 C.F.R. § 668.14.

79.     One of these requirements, and the one central to this action, is the Incentive

Compensation Ban.  It prohibits participating schools from providing:

> [A]ny commission, bonus, or other incentive payment based directly or indirectly on
> success in securing enrollments or financial aid to any persons or entities engaged in any
> student recruiting or admission activities or in making decisions regarding the award of
> student financial assistance. . . .

20 U.S.C. § 1094(a)(20).  *See also* 34 C.F.R. § 668.14(b)(22).

80.     Compliance with the Incentive Compensation Ban, as with all other rules and

regulations the PPA incorporates, is both a condition of participation in Title IV programs and

a condition of payment for Title IV funds.  *See* 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14(a)(1).

And it is a requirement each participating institution—including Defendant Universities here—

specifically agrees to abide by under the PPA by certifying: (i) "[t]he execution of this

Agreement by the Institution and the Secretary is a prerequisite to the institution's initial or

continued participation in any Title IV, HEA Program," and (ii) it "understands and agrees that

it is subject to and will comply with the program statues and implementing regulations."

81.     To maintain Title IV eligibility, participating institutions also must provide

DOE with annual compliance audits and financial statements prepared by independent

auditors.  20 U.S.C. § 1094(c)(1)(A); 34 C.F.R. § 668.23.  DOE uses the audit reports to ensure

schools are adhering to all applicable requirements for program participation and funding,

including the Incentive Compensation Ban. As a required part of the audit, participating

schools must certify that they have complied with all program requirements, including the

Incentive Compensation Ban.

82.     Congress added the Ban to the HEA in 1992. It did so after finding the payment

of commissions, bonuses, and other incentive payments based on success in recruiting students

led to misuse of federal student-aid monies by universities enrolling and exploiting unqualified

students. These incentive payments also lead to a disproportionate default on government-

backed student loans, significantly draining the pool of available Title IV funding. *See* S. Rep.

No. 102-58, at 8 (1991) (noting incentive compensation among the "Abuses in Federal Student

Aid Programs" and testimony "that contests were held whereby sales representatives earned

incentive awards for enrolling the highest number of students for a given period"); H.R. Rep.

No. 102-447, at 10 (1992), *reprinted in* 1992 U.S.C.C.A.N. 334, 343 (noting new provisions

that "include prohibiting the use of commissioned sales persons and recruiters").

83.     The Ban was further strengthened in October 2010 (effective July 2011) through

DOE regulations to "***comprehensively ban*** the use of commissions, bonuses, and other direct

forms of compensation based on success in securing enrollments or the award of financial aid"

and "achieve the goals intended by the Congress." 75 Fed. Reg. 66,832, 66,872 (Oct. 29,

2010) (emphasis added).

84.     The new regulations clarified the scope of the Ban by creating a two-part test to

"determine if a payment or compensation is permissible under section 487(a)(20) of the HEA":

(1) Whether it is a commission, bonus, or other incentive payment, defined as an award
of a sum of money or something of value paid to or given to a person or entity for
services rendered; and

(2) Whether the commission, bonus, or other incentive payment is provided to any
person based in any part, directly or indirectly, upon success in securing enrollments or

the award of financial aid, which are defined as activities engaged in for the purpose of the admission or matriculation of students for any period of time or the award of financial aid.

If the answer to each of these questions is yes, the commission, bonus, or incentive payment is not permitted under the statute. 75 Fed. Reg. 66,832, 66,873.

85.     The regulations provide for one major exception to this otherwise strict two-part test. 34 C.F.R. § 668.14(b)(22). Under the so-called "bundled service" exception, third-party recruitment agencies, not affiliated with or employed by the participating education institution, may enter into "[p]rofit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds." *Id.*

86.     This exception to the Incentive Compensation Ban is limited in scope and intended to cover a recruitment agency providing only traditional marketing and advertising services for the school, student support services such as career counseling, or managers participating in policy decisions regarding marketing or recruitment strategy. *See* DOE Implementation of Program Integrity Regulations, GEN-11-05 (Mar. 17, 2011), Table 1, https://ifap.ed.gov/dear-colleague-letters/03-17-2011-gen-11-05-subject-implementation-program-integrity-regulations. Agencies such as Across the Pond that provide pure recruitment activities, targeted marketing services, and financial aid assistance do not qualify for the limited exception.

## V.    DEFENDANTS VIOLATE THE INCENTIVE COMPENSATION BAN

87.     Across the Pond acts as the recruiting agency for U.S. students for each of the Defendant Universities. In exchange, Defendant Universities pay Across the Pond based on the number of students it recruits—exactly the type of commission-based recruiting contracts

the Incentive Compensation Ban prohibits. For some contracts, Across the Pond uses a standard operating agreement which directly ties Across the Pond's compensation to the number of U.S. students it secures for enrollment. For others, the commission payments are obfuscated through what is termed a "marketing contract." Both payment models violate the Ban.

88.    Through the work of its principal, who oversees U.S. recruitment at one Defendant University, Relator has first-hand knowledge of Defendants' scheme to violate the Incentive Compensation Ban.

89.    Across the Pond has been the U.S. recruiting agency for Relator's university for several years. Across the Pond recruits students from the U.S. for Relator's university, provides targeted marketing information to potential students, and aids students in filling out enrollment and financial aid forms. These are the same or similar services provided by Across the Pond to all Defendant Universities.

90.    For Relator's university, through at least the 2019–2020 school year, Across the Pond's agreement was explicitly an incentive-based contract, whereby the university paid Across the Pond a commission based solely on the number of students it recruited for enrollment. The payment was based on a percentage of the student tuition, with the percentage increasing as the number of recruited students increased. The parties' agreement does not pretend that Across the Pond will provide any bundled services that could potentially excuse the blatant tuition-sharing. There is no mention of generalized marketing, student services, or policy decision-making. In other words, the agreement on its face and in its enactment violates the Incentive Compensation Ban.

24

91.    Across the Pond's early 2020 invoices to Relator's university further confirm the commission pay structure, listing only a single line item: "Commission for confirmed ATP enrollments, 2019/20."

92.    When Relator learned the details of this financial relationship and how it implicated the Incentive Compensation Ban, Relator reported its concerns to its immediate supervisor. Relator's supervisor confirmed the university was paying tuition-based commissions to Across the Pond. When Relator questioned the supervisor on the Incentive Compensation Ban, the supervisor responded that the university did not believe it applied to or would be enforced against non-U.S.-based universities. The supervisor further referred to the many other universities in the U.K. that use Across the Pond for U.S. recruiting and that structured their compensation arrangements the same way.

93.    Not satisfied with this response, Relator escalated its concerns to the university's senior management. After investigating the matter further, the university ultimately shared Relator's view that its arrangement with Across the Pond likely violated the Incentive Compensation Ban. Specifically, senior management reviewed a sample of invoices to Across the Pond and confirmed tuition-based payments to Across the Pond purely for the recruitment of multiple students receiving government grants and loans. The investigation further found no exceptions to the Incentive Compensation Ban applied.

94.    Despite these findings, the university and Across the Pond did not change the structure of their financial or recruiting relationship to remedy the violation of the Incentive Compensation Ban. Instead, they merely restructured their compensation arrangement to stop using the word "commission." The new arrangement, styled as a "marketing services agreement," provides that the university will pay Across the Pond a flat fee per year regardless

25

of the number of students it successfully recruits, thus ostensibly moving away from the direct tuition-sharing agreement under which they previously operated.

95.    However, this new arrangement does not remedy the violation because it is based on the number of students Across the Pond recruited in the prior year. In other words, the agreement has moved from the direct commission-based model that previously existed to an indirect model that accomplishes the very same thing. Communications between Relator's supervisor and Across the Pond confirm this result and the parties' intent to accomplish it by trying to get around the strictures of a straight commission-based arrangement. Some of these communications go so far as to show actual negotiations over commission rates, even though the agreement itself assiduously avoids using the word "commission." This new compensation model is thus an indirect incentive compensation, which is equally prohibited under the Ban. *See* 20 U.S.C. § 1094(a)(20).

96.    In its efforts to address and remedy the violations at its own university, Relator looked into the compensation arrangements between Across the Pond and many other U.K. universities for which it served as the U.S. recruiting agent. In fact, Relator's supervisor directed Relator to do that in an effort to assuage Relator that the university was following a common practice in its compensation structure with Across the Pond. Relator has since confirmed that Across the Pond has the same kind of improper compensation arrangements with all the universities with which it contracts in the U.K. Relator confirmed this from its dealings with its supervisor who disclosed that other Defendant Universities, to avoid audits by U.S. authorities, created similar sham marketing agreements with Across the Pond whereby the prior year's commission rates would be paid via a purported marketing fee.

97.     Relator also confirmed it directly from its dealings with Across the Pond, whose representative sent written communications verifying that Across the Pond used sham marketing agreements with multiple universities to escape detection of their Incentive Compensation Ban violations.  Across the Pond's representative explicitly acknowledged that in the marketing agreements, Defendant Universities pay marketing fees equivalent to annual commission rates.

98.     Relator further verified the widespread nature of this scheme through review of email and listserv communications from other university officials in the Across the Pond U.K. network.  These showed that other Defendant Universities were well aware of the Incentive Compensation Ban, but paid Across the Pond using the same model as Relator's university: either 1) an explicit tuition-based commission contract tied to the number of students Across the Pond successfully recruited, or 2) a sham marketing agreement meant to obfuscate the true commissions-based payment structure by tying the payment to the number of students Across the Pond recruited in the prior year.  These communications among various admissions and student support officers at many Defendant Universities specifically discuss how to structure Across the Pond contracts to avoid Title IV audits and U.S. scrutiny.  They also share advice on how to set up marketing agreements to create the perception that Defendant Universities were not paying commissions.

99.     In addition to the illegal commission contracts, Defendant Across the Pond applies the kind of misleading and aggressive sales tactics to students, including students receiving Title IV funding, against which the Incentive Compensation Ban is designed to protect.  Relator has received complaints from Across the Pond students, including students receiving Title IV funding, of receiving misinformation from Across the Pond about

27

recruitment policies, financial aid packages, and the relative benefits of working with Across the Pond versus applying directly to Defendant Universities.

## VI. PRIOR ENFORCEMENT ACTIONS AGAINST VIOLATIONS OF THE INCENTIVE COMPENSATION BAN

100.    The improper financial arrangements between Across the Pond and Defendant Universities is precisely the type of compensation structure the Department of Justice has repeatedly struck down.

101.    For example, in *United States ex rel. Shoe v. North Greenville University*, No. 16-1570 (D.S.C., filed May 16, 2016), the Government settled claims with three universities and one recruitment company for illegally paying commissions to the recruitment company in violation of the Incentive Compensation Ban. The recruitment company was promised a "revenue share" in exchange for recruiting students to the universities, in violation of the Incentive Compensation Ban. As another example, in *United States et al ex rel. Washington et al v. Education Management Corporation et al.*, No 07-461 (W.D. Pa., filed Apr. 5, 2007), the Department of Justice and a number of states reached a global settlement with Education Management Corporation for paying admissions officers solely based on the number of students recruited.

## CLAIM FOR RELIEF

### False Claims Act
### 31 U.S.C. § 3729(a)(1)(A-C)

1.    Relator alleges and incorporates by reference the allegations made herein.

2.    This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32.

3.      By virtue of the acts described above, the Defendants knowingly submitted or caused to be submitted to the United States Government false or fraudulent claims for payment through the Title IV loan and grant programs.  Each of these requests for payment constitutes an actionable false claim under the False Claims Act.

4.      Through the acts described above and otherwise, the Defendants, and their agents and employees, knowingly made, used, and/or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the United States Government.  These records include but are not limited to Defendants' Title IV loan and grants applications and the contracts between Defendants meant to hide the true commissions payment structure.

5.      Through the acts described above and otherwise, the Defendant Universities also have violated the direct terms of their PPAs, and their explicit certifications they have complied with the PPA, which are both conditions of eligibility for and payment of Title IV funding.  The PPAs the Defendant Universities sign every year, including Relator's university, specifically "condition the initial and continuing eligibility of the school to participate in a [Title IV] program upon compliance with" the requirements of 20 U.S.C. § 1094 and 34 C.F.R. § 668.14, including the Incentive Compensation Ban.  The PPA explicates that Defendant Universities' certification that they are complying with the Ban is material to the Government's continued willingness to allow them to participate in Title IV programs.

6.      Defendant Universities have further falsely certified compliance with the annual audit requirement, whereby each and every Defendant University purports to comply with the Incentive Compensation Ban as required by 20 U.S.C. § 1094(c)(1)(A) and 34 C.F.R. § 668.23.

7.      The United States, unaware of the falsity of the records, statements, claims, and certifications made by the Defendants, along with their accompanying violations of the PPAs and annual audits, paid the Defendants for claims that would otherwise not have been allowed and under a program for which the Defendant Universities would not even have been eligible.

8.      By reason of these payments, the United States Government has been damaged, and continues to be damaged, in the amount of millions of dollars.

## PRAYER FOR RELIEF

**WHEREFORE,** Relators pray for judgment against Defendants as follows:

1.      That the Defendants cease and desist from violating 31 U.S.C. §§ 3729 *et seq.*;

2.      That the Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendants' actions, as well as civil penalties against the Defendants for each violation of 31 U.S.C. §§ 3729 *et seq.*;

3.      That Relator be awarded the maximum amount pursuant to § 3730(d) of the False Claims Act;

4.      That Relator be awarded all costs and expenses of this action, including attorney's fees, litigation expenses, and post-judgement interest; and

5.      That the United States and Relator receive all such other relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demand trial

by jury.

February 17, 2021                              Respectfully submitted,

                              _/s/ Erica Blachman Hitchings_
                              Erica Blachman Hitchings (BBO #669825)
                              Email: erica@whistleblowerllc.com
                              **WHISTLEBLOWER LAW COLLABORATIVE**
                              **LLC**
                              20 Park Plaza, Suite 438
                              Boston, MA  02116-4334
                              Tel: (617) 366-2800
                              Fax: (888) 676-7420

                              Gordon Schnell
                              Mary Inman
                              Harry Litman
                              Sarah P. Alexander
                              **CONSTANTINE CANNON LLP**
                              335 Madison Avenue, 9th Floor
                              New York, New York
                              Tel: (212) 350-2700
                              Fax: (212) 350-2701
                              gschnell@constantinecannon.com
                              minman@constantinecannon.com
                              hlitman@constantinecannon.com
                              spalexander@constantinecannon.com

                              _Counsel for Plaintiff-Relator_